## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| CONNECTICUT CITIZENS DEFENSE LEAGUE, INC., OREL JOHNSON, SHAQUANNA WILLIAMS, ANNE CORDERO, and JAMIE EASON | |
| Plaintiffs, | **Case No. _____** |
| v. | **COMPLAINT** |
| JASON THODY, RENEE DOMINGUEZ, REBECA GARCIA, and FERNANDO SPAGNOLO, | AUGUST 30, 2021 |
| Defendants. | |

Plaintiffs CONNECTICUT CITIZENS DEFENSE LEAGUE, INC. ("CCDL"),
OREL JOHNSON ("Johnson"), SHAQUANNA WILLIAMS ("Williams"), ANNE
CORDERO ("Cordero"), and JAMIE EASON ("Eason"), (together, "Plaintiffs"), by and
through the undersigned counsel of record, bring this civil rights complaint for a writ of
mandamus, injunctive and declaratory relief, and damages, against Defendants JASON
THODY ("Thody"), RENEE DOMINGUEZ ("Dominguez"), REBECA GARCIA
("Garcia"), and FERNANDO SPAGNOLO ("Spagnolo"), (together, "Defendants"), and
allege as follows:

## I.     INTRODUCTION

1.      Connecticut has enacted extraordinarily severe restraints on firearms ownership. To

buy, possess, and carry a firearm for personal protection in Connecticut, an individual

must traverse a dual permitting process: First, the individual must apply for and obtain a municipal firearm permit from their city of residence. Then, only after obtaining that municipal firearm permit, may the individual then apply for and obtain a second, state-issued firearm permit. Only with that state-issued firearm permit may a Connecticut resident lawfully obtain, possess, and carry a firearm for personal protection.

2.      Through this complicated, time consuming, and expensive dual permit regulatory system, certain cities, including Hartford, New Haven, Bridgeport and Waterbury (the "Cities") treat the people's fundamental Second Amendment right to keep and bear arms as a mere governmental gratuity which can be delayed, ignored, infringed, and even disregarded and prevented altogether whenever convenient for the Cities' regulatory bureaucracy.

3.      Now however, due to the conduct of the Defendants, that permitting system has been administratively slowed to the point of an effective shut down for the residents of the Cities, making it effectively impossible for people living in those municipalities to timely obtain a municipal firearms permit as the threshold step to obtaining a state-issued firearms permit.

4.      Due to the conduct of Defendant Thody, the permitting system in Hartford has been slowed to the point of an effective shut down, making it nearly impossible for a Hartford resident to timely obtain a municipal firearms permit.

5.  Due to the conduct of Defendant Dominguez, the permitting system in the City of New Haven has been slowed to the point of an effective shut down, making it nearly impossible for a New Haven resident to timely obtain a municipal firearms permit.

6.  Due to the conduct of Defendant Garcia, the permitting system in the City of Bridgeport has been slowed to the point of an effective shut down, making it nearly impossible for a Bridgeport resident to timely obtain a municipal firearms permit.

7.  Due to the conduct of Defendant Spagnolo, the permitting system in the City of Waterbury has been slowed to the point of an effective shut down, making it nearly impossible for a Waterbury resident to timely obtain a municipal firearms permit.

8.  When it is operational, Connecticut's regulatory scheme requires, under penalty of criminal sanction, that every person seeking to exercise their Second Amendment right to obtain, possess, and carry firearms for personal protection – with notable preferential exceptions inapplicable here – must, in almost all occasions, first have their fingerprints taken by law enforcement in their city of residence as a threshold step in applying for a municipal firearms permit.

9.  Without providing fingerprints to local law enforcement, one cannot obtain a municipal firearms permit. Without first obtaining a municipal firearms permit, one cannot obtain a state-issued firearms permit to obtain, possess, and carry firearms for personal protection.

10. Individual plaintiffs Johnson, Williams, Cordero, and Eason (together, "Applicants") are United States citizens residing respectively in the cities of Hartford, New Haven,

Bridgeport, and Waterbury. The Applicants are law-abiding members of their respective communities and members of Plaintiff CCDL.

11.     The Applicants do not currently have the firearms permit required by state law to obtain, possess, and carry firearms for personal protection. Due to the Defendants' unconstitutional conduct, the initial fingerprinting and processing parts of the state's regulatory scheme has, in the Cities, been administratively slowed to the point of an effective shut down for the residents of those Cities, thus illegally delaying, hindering, prohibiting, and preventing law-abiding persons, including the Applicants and similarly situated CCDL members, from obtaining the firearms permit necessary under state law to legally obtain, possess, and carry firearms for personal protection.

12.     The Applicants and similarly situated CCDL members who are not prohibited from acquiring, possessing, and carrying firearms under state and federal law, have a fundamental, constitutionally guaranteed right to do so. But because of Defendants' unconstitutional actions in enacting, interpreting and enforcing certain laws and orders, and in ignoring, avoiding or circumventing others, the Applicants have been unconstitutionally delayed, hindered, prevented, and prohibited, from timely exercising their constitutional rights.

13.     The conduct of the Defendants, undertaken under color of state law, illegally deprives the Applicants and similarly situated CCDL members of their constitutional right to keep and bear arms.

14.     Pursuant to state law, the Applicants, and similarly situated CCDL members, also have a statutory right to apply for a municipal firearms permit as a threshold step in

applying for a state-issued firearms permit to obtain, possess, and carry firearms for personal protection.

15. By administratively slowing to the point of an effective shutdown, the initial fingerprinting and processing parts of the state's regulatory scheme, Defendants illegally deprive the Applicants, and similarly situated CCDL members, of their right to due process of law and right to equal protection under the law.

## II.     JURISDICTION & VENUE

16. This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of law, statutes, ordinances, regulations, customs, and usages of subdivisions of the State of Connecticut, of the rights, privileges and immunities secured by the United States Constitution. To the extent Plaintiffs' claims may allege or may be construed to allege state law claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

17. Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought.

## III.     PARTIES

18. Plaintiff CCDL is a non-profit educational foundation, incorporated under the laws of Connecticut, with its principal place of business in Stratford, Connecticut. Its mission is to preserve the effectiveness of the Second Amendment through legislative and grassroots advocacy, outreach, education, research, publication, legal action and programs focused on the Constitutional right to keep and bear arms.  CCDL has over

41,000 members and supporters nationwide, with more than ninety-five percent of its members and supporters being residents of Connecticut. CCDL represents its members and supporters - which include individuals seeking to exercise their right to acquire, possess, and carry firearms for personal protection. CCDL brings this action on behalf of itself, its members, and supporters.

19.     CCDL has expended and diverted resources otherwise reserved for different institutional functions and purposes, and is adversely and directly harmed by the illegal and unconstitutional actions of the Defendants as alleged herein. CCDL has diverted, and continues to divert, significant time, money, effort, and resources to addressing the Defendants' illegal and unconstitutional conduct that would otherwise be used for educational, outreach, public relations, and/or programmatic purposes.

20.     Among other diversions, the Defendants' illegal conduct has forced CCDL to cancel its annual outreach event and divert the previously allocated funds, energies and resources to the cause of this legal action. Rather than working on the usual activities of CCDL's annual outreach event and other educational, outreach, public relations, and/or programmatic events and operations, CCDL's officers and Executive Board members have devoted, and are continuing to devote, significant time, money, effort, and resources to addressing the Defendants' illegal and unconstitutional conduct. CCDL, its officers and Executive Board members will be forced to continue diverting such time, money, effort, and resources from CCDL's normal educational, outreach, public relations, and/or programmatic events and operations, and will be forced to

cancel other of the organization's events – which normally help CCDL fulfill its mission – so long as the Defendants' unconstitutional conduct is allowed to continue.

21.    As to all claims made in a representative capacity, there are common questions of law that substantially affect the rights, duties, and liabilities of potentially numerous similarly situated residents whose constitutional rights have been, and are continuing to be, infringed by the challenged actions of the Defendants.

22.    This action seeks damages, an order of mandamus, declaratory and injunctive relief, and involves matters of substantial public interest. Considerations of necessity, convenience, and justice warrant relief to CCDL and the other Plaintiffs in a representative capacity. CCDL is uniquely situated and able to communicate with and provide notice to its members, supporters, and other constituents who are or would be part of any identifiable class of individuals for whose benefit this Court may grant the requested relief.

23.    Plaintiff Johnson is a natural person, a resident of Hartford, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to obtain, possess, and carry firearms for personal protection. Plaintiff Johnson is a member and supporter of Plaintiff CCDL.

24.    Plaintiff Williams is a natural person, a resident of New Haven, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to obtain, possess, and carry firearms for personal protection. Plaintiff Williams is a member and supporter of Plaintiff CCDL.

25.    Plaintiff Cordero is a natural person, a resident of Bridgeport, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to obtain, possess, and carry firearms for personal protection. Plaintiff Cordero is a member and supporter of Plaintiff CCDL.

26.    Plaintiff Eason is a natural person, a resident of Waterbury, Connecticut, an adult over the age of 21, a citizen of the United States, and is legally eligible under federal and state law to obtain, possess, and carry firearms for personal protection. Plaintiff Eason is a member and supporter of Plaintiff CCDL.

27.    Defendant Thody is the Chief of Police for the City of Hartford, a municipality located in the State of Connecticut. Upon information and belief, Chief Thody oversees, directs, implements, and is ultimately responsible for the acceptance of applications for, the processing of, and the issuance of, municipal firearm permits to residents of the City of Hartford in accordance with the statutory process established under C.G.S. § 29-28, et seq. Defendant Thody is a "person" within the meaning of 42 U.S.C. § 1983, and was, has been, and continues to be, clothed with the authority of his municipal police department and acting under color of state law, at all relevant times. Defendant Thody is sued in his official capacity for prospective injunctive and declaratory relief, and in his individual capacity for damages.

28.    Defendant Dominguez is the Acting Chief of Police for the City of New Haven, a municipality located in the State of Connecticut. Upon information and belief, Acting Chief Dominguez oversees, directs, implements, and is ultimately responsible for the acceptance of applications for, the processing of, and the issuance of, municipal

firearm permits to residents of the City of New Haven in accordance with the statutory process established under C.G.S. § 29-28, et seq. Defendant Dominguez is a "person" within the meaning of 42 U.S.C. § 1983, and was, has been, and continues to be, clothed with the authority of her municipal police department and acting under color of state law at all relevant times. Defendant Dominguez is sued in her official capacity for prospective injunctive and declaratory relief, and in her individual capacity for damages.

29.  Defendant Garcia is the Acting Chief of Police for the City of Bridgeport, a municipality located in the State of Connecticut. Upon information and belief, Acting Chief Garcia oversees, directs, implements, and is ultimately responsible for the acceptance of applications for, the processing of, and the issuance of, municipal firearm permits to residents of the City of Bridgeport in accordance with the statutory process established under C.G.S. § 29-28, et seq. Defendant Garcia is a "person" within the meaning of 42 U.S.C. § 1983, and was, has been, and continues to be, clothed with the authority of her municipal police department and acting under color of state law, at all relevant times. Defendant Garcia is sued in her official capacity for prospective injunctive and declaratory relief, and in her individual capacity for damages.

30.  Defendant Spagnolo is the Chief of Police for the City of Waterbury, a municipality located in the State of Connecticut. Upon information and belief, Chief Spagnolo oversees, directs, implements, and is ultimately responsible for the acceptance of applications for, the processing of, and the issuance of, municipal firearm permits to

residents of the City of Waterbury in accordance with the statutory process

established under C.G.S. § 29-28, et seq. Defendant Spagnolo is a "person" within

the meaning of 42 U.S.C. § 1983, and was, has been, and continues to be, clothed

with the authority of his municipal police department and acting under color of state

law, at all relevant times. Defendant Spagnolo is sued in his official capacity for

prospective injunctive and declaratory relief, and in his individual capacity for

damages.

## IV.   <u>RELEVANT STATUTORY LAW</u>

31.   In Connecticut, barring a statutory exemption, none of which is applicable here, to

carry a firearm for personal protection a person must possess a state-issued forearm

permit.  CGS §§ 29-35, 29-38. Doing so without a state-issued firearm permit is a

felony.

32.   Persons convicted of a felony not only face serious criminal penalties, but such

conviction would also disqualify them from obtaining a state-issued firearms permit

and from lawfully obtaining, possessing, and carrying a firearm for personal

protection.

33.   On information and belief, law enforcement officers in the Cities routinely enforce §

CGS 29-35, and/or CGS § 29-38, against individuals without a state-issued firearm

permit who are otherwise legally eligible to carry firearms for personal protection.

34.   In Connecticut, as a condition precedent to the issuance of a state-issued firearm

permit, the applicant must first obtain a municipal firearm permit from the city in

which said applicant resides ("local issuing authority"). CGS § 29-28(b).

35. In Connecticut, a person seeking to obtain a municipal firearm permit must submit his/her application to their local issuing authority. CGS § 29-28(a). As a part of the application process, the applicant is required to submit him/herself in person for the purposes of having his/her fingerprints taken for the CGS § 29-17a criminal background check. CGS § 29-29.

36. In Connecticut, municipal law enforcement is prohibited from refusing to take the fingerprints of an applicant for a municipal firearms permit. CGS § 29-17c.

37. In Connecticut, municipal law enforcement is required to complete the entire permitting process from fingerprinting and application submission to decision in no more than eight weeks. C.G.S. § 29-28a(b).

## V.   <u>PRIOR RELATED LITIGATION</u>

38. On May 9, 2020, the Plaintiff CCDL along with several individual Plaintiffs, filed an action in this Court known as *Connecticut Citizens Defense League, Inc. et al. v. Lamont et al.* (3:20-cv-00646-JAM). In that case, the Plaintiffs alleged that Connecticut Governor Ned Lamont, via Executive Order 7E, permitted Connecticut municipal and state police to stop taking fingerprints of firearm permit applicants, while permitting fingerprinting to continue for other purposes. In that case, in addition to the Governor and the state police, the Plaintiffs brought suit against four municipalities: Ansonia, Bristol, Farmington, and Vernon.  There, the Plaintiffs sought emergency injunction relief, asking the court to restrain the Defendants from refusing to take applicants' fingerprints.

39.     Prior to the hearing on the Plaintiffs' Motion for Preliminary Injunction, the
        municipalities agreed to resume taking fingerprints, however the state refused,
        thereby necessitating a preliminary injunction hearing, which occurred on June 1,
        2020. On June 8, 2020, the Honorable Jeffrey A. Meyer issued the court's decision,
        finding that when the government creates a process a person must follow in order to
        exercise the person's Second Amendment right to keep and bear arms, the person's
        Second Amendment rights are violated if the government then shuts down that
        process while still requiring the person complete to the process to exercise the right.
        Judge Meyer issued a preliminary injunction ordering Governor Lamont to repeal his
        Executive Order, to which the Governor complied. Thereafter, the Governor
        appealed to the Second Circuit Court of Appeals which, on July 28, 2021, ordered the
        preliminary injunction vacated based upon a finding that, under the facts of that case,
        CCDL lacked organizational standing and the individual Plaintiffs' claims had
        become moot. The Second Circuit did not dispute or contradict the substantive
        constitutional analysis of Judge Meyer's preliminary injunction. Upon the Second
        Circuit's findings, Judge Meyer granted the Motions to Dismiss as to the
        municipalities. The case remains pending.

## VI.     STATEMENT OF RELEVANT FACTS

        A.      Johnson / Hartford

40.     On or about June 8, 2021, Plaintiff Johnson appeared at the Hartford Police
        Department to submit his application for a municipal firearm permit. Upon
        presenting himself at the Hartford Police Department for fingerprinting, Plaintiff

Johnson was informed that the Hartford Police Department, under the advice, supervision, direction and responsibility of Defendant Thody, required applicants like Johnson to put their names on a list, and that the Hartford Police Department would eventually call the applicants in the order on the list to make an appointment for the applicants to have their fingerprints taken and to submit their applications. Under Defendant Thody's advice, supervision, direction and responsibility, the Hartford Police Department refused to take Plaintiff Johnson's fingerprints or accept his application.

41. Under Defendant Thody's advice, supervision, direction and responsibility, the Hartford Police Department directed Johnson to add his name to a list for an appointment to have his fingerprints taken, which Johnson did. During the more than two and a half months since Johnson added his name to the list, he has followed up several times with the Hartford Police Department, but has repeatedly been informed that the Hartford Police Department is not prepared to take Johnson's fingerprints or to accept his application for a municipal firearms permit.

42. Upon information and belief, once an applicant has his/her fingerprints taken by the Hartford Police Department to start to application process, it typically takes the Hartford Police Department in excess of eight weeks to process the application.

43. With the exception of not having a permit, Johnson is not prohibited under any applicable law from obtaining, possessing, or carrying a firearm for personal protection and, in fact, he meets all the eligibility criteria for applying to obtain a state-issued firearm permit under the governing statutory scheme.

44.    Plaintiff Johnson desires to apply for and obtain a municipal firearm permit so that

he may exercise these statutory rights, which is the only effective means by which he

may ultimately exercise his constitutional rights to keep and bear arms in Connecticut.

To that end, Plaintiff Johnson has attempted to obtain a municipal firearm permit

from his city of residence, but the delays of fingerprinting and processing initiated by

Defendant Thody is delaying, hindering, prohibiting, and preventing Johnson from

even being able to apply for a municipal firearm permit, much less timely obtaining

one.

       B.    Williams / New Haven

45.    On or about August 18, 2021, Plaintiff Williams appeared at the New Haven Police

Department to submit her application for a municipal firearm permit. She had

previously been fingerprinted at a cost of $25.00 and included her fingerprints with

the application documents she tried to submit. Upon presenting herself at the New

Haven Police Department to submit her application, Plaintiff Williams was informed

that the New Haven Police Department, under the advice, supervision, direction and

responsibility of Defendant Dominguez, implemented a new permitting system for

municipal firearm permits, and thus, would not accept Williams's application.

46.    Under Defendant Dominguez's advice, supervision, direction and responsibility, the

New Haven Police Department directed Williams to sign up online for an

appointment to submit her application. When Williams tried to sign up online for an

appointment as instructed, she was informed that the first available appointment for

her to submit her application was on March 30, 2022, more than seven months

14

hence. She was also informed that by March 30, 2022, the fingerprints she already paid to have taken would be stale, and that she would then be required to pay a second time and have a fresh set of fingerprints taken in order to submit her application.

47.   Upon information and belief, once an applicant submits an application for a municipal firearm permit to the New Haven Police Department, it typically takes the New Haven Police Department in excess of eight weeks to process the application.

48.   With the exception of not having a permit, Williams is not prohibited under any applicable law from obtaining, possessing, or carrying a firearm for personal protection and, in fact, she meets all the eligibility criteria for applying to obtain a state-issued firearm permit under the governing statutory scheme.

49.   Plaintiff Williams desires to apply for and obtain such a permit so that she may exercise these statutory rights, which is the only effective means by which she may ultimately exercise her constitutional rights to keep and bear arms in Connecticut. To that end, Plaintiff Williams has attempted to obtain a municipal firearm permit from her city of residence, but the permit processing system initiated in New Haven by Defendant Dominguez, is delaying, hindering, prohibiting, and preventing Williams from even being able to apply for a municipal firearm permit, much less timely obtaining one.

C.   Cordero / Bridgeport

50.   Late in 2019, Plaintiff Cordero contacted the Bridgeport Police Department via telephone to apply for municipal firearm permit, and was told that someone would

call her back. She subsequently called on many occasions over the ensuing months

with the same answer, and no call back.  In early July of 2021 Plaintiff Cordero called

once again to initiate the process for obtaining a municipal firearm permit, and at that

time, under Defendant Garcia's advice, supervision, direction and responsibility, the

Bridgeport Police Department directed Cordero to sign up for an appointment to

have her fingerprints taken. When Cordero tried to sign up for an appointment as

instructed, she was informed that the first available appointment for her to submit

her application was in January 2022, six months hence.

51.    Upon information and belief, once an applicant has his/her fingerprints taken by the

Bridgeport Police Department to start the application process and submits his/her

application for a municipal firearm permit, it typically takes the Bridgeport Police

Department in excess of eight weeks to process the application.

52.    With the exception of not having a permit, Cordero is not prohibited under any

applicable law from obtaining, possessing or carrying a firearm for personal

protection and, in fact, she meets all the eligibility criteria for applying to obtain a

state-issued firearm permit under the governing statutory scheme.

53.    Plaintiff Cordero desires to apply for and obtain such a permit so that she may

exercise these statutory rights, which is the only effective means by which she may

ultimately exercise her constitutional rights to keep and bear arms in Connecticut. To

that end, Plaintiff Cordero has attempted to obtain a municipal firearm permit from

her city of residence, but the permit processing system initiated in Bridgeport by

Defendant Garcia is delaying, hindering, prohibiting, and preventing her from even being able to apply for a municipal firearm permit, much less timely obtaining one.

        D.     Eason / Waterbury

54.    On August 12, 2021, Plaintiff Eason appeared at the Waterbury Police Department to submit his application for a municipal firearm permit. Upon presenting himself at the Waterbury Police Department to submit his application, Plaintiff Eason was informed that the Waterbury Police Department, under the advice, supervision, direction and responsibility of Defendant Spagnolo, had implemented a new permitting system for municipal firearm permits, and thus, would not accept Eason's application for a municipal firearm permit.

55.    Under Defendant Spagnolo's advice, supervision, direction and responsibility, the Waterbury Police Department directed Eason to sign up online for an appointment to submit his application. Eason signed up online for an appointment, and was able to submit his application on August 17, 2021. At the time Eason submitted his application, the Waterbury Police Department, under Defendant Spagnolo's advice, supervision, direction and responsibility, informed Eason that the Waterbury Police Department would take forty-eight weeks (approximately eleven months) to process Eason's application.

56.    Upon information and belief, once an applicant submits an application for a municipal firearm permit to the Waterbury Police Department, it typically takes the Waterbury Police Department in excess of eight weeks to process the application.

57.     With the exception of not having a permit, Eason is not prohibited under any applicable law from obtaining, possessing, or carrying a firearm for personal protection and, in fact, he meets all the eligibility criteria for applying to obtain a state-issued firearm permit under the governing statutory scheme.

58.     Plaintiff Eason desires to apply for and obtain such a permit so that he may exercise these statutory rights, which is the only effective means by which he may ultimately exercise his constitutional rights to keep and bear arms in Connecticut. To that end, Plaintiff Eason has attempted to obtain a municipal firearm permit from his city of residence, but the permit processing system initiated in Waterbury by Defendant Spagnolo, is delaying, hindering, prohibiting, and preventing Eason from timely obtaining one.

59.     The population of Black/African-American and Hispanic/Latino people who live in the Cities is greater than that of any other municipality in Connecticut.

60.     Upon information and belief, the vast majority of cities and towns in Connecticut with far lower Black/African-American and Hispanic/Latino populations than the Cities, typically accept and process applications for municipal firearm permits within the eight weeks allowed under state law.

61.     Upon information and belief, the Cities, which have the highest Black/African-American and Hispanic/Latino populations in the state, are the most violative of the eight-week statutory processing requirement and subject their residents applying for firearms permits to the longest delays.

62.    The present refusal of the Defendants' police departments to timely take fingerprints and process applications of persons like the Applicants, and similarly situated CCDL members, is unconstitutionally delaying, hindering, preventing and prohibiting the only process by which individuals in those municipalities can obtain a permit required to legally purchase, possess and carry a firearm for personal protection in Connecticut.

63.    The present refusal of the Hartford Police Department, under the advice, supervision, direction and responsibility of Defendant Thody, to take fingerprints, and thus to accept the application of Plaintiff Johnson, is unconstitutionally delaying, hindering, preventing, and prohibiting the only process by which that Plaintiff can obtain a permit required to legally purchase, possess, and carry a firearm for personal protection in Connecticut.

64.    The present refusal of the New Haven Police Department, under the advice, supervision, direction and responsibility of Defendant Dominguez, to timely process the application of Plaintiff Williams, is unconstitutionally delaying, hindering, preventing, and prohibiting the only process by which that Plaintiff can obtain a permit required to legally purchase, possess, and carry a firearm for personal protection in Connecticut.

65.    The present refusal of the Bridgeport Police Department, under the advice, supervision, direction and responsibility of Defendant Garcia, to take fingerprints, and thus to accept the application of Plaintiff Cordero, is unconstitutionally delaying, hindering, preventing, and prohibiting the only process by which that Plaintiff can

obtain a permit required to legally purchase, possess, and carry a firearm for personal protection in Connecticut.

66. The present refusal of the Waterbury Police Department, under the advice, supervision, direction and responsibility of Defendant Spagnolo, to timely process the application of Plaintiff Eason, is unconstitutionally delaying, hindering, preventing, and prohibiting the only process by which that Plaintiff can obtain a permit required to legally purchase, possess, and carry a firearm for personal protection in Connecticut.

67. Acting under color of law, each of the Defendants personally participated in the deprivation of the constitutional rights of the specific Plaintiff resident to each Defendant's respective City and similarly situated CCDL members by establishing, and/or allowing those under their supervisory control to establish, rules, customs, policies, practices, and procedures at their respective police departments, which is illegally delaying, hindering, prohibiting, and preventing the respective Plaintiff and similarly situated CCDL members from the Defendants' respective City from timely exercising their constitutional rights. Defendants' unconstitutional conduct is ongoing.

68. As Chiefs or Acting Chiefs of their respective police departments, the Defendants had a legal duty and responsibility not to take actions, and not to allow those under their supervisory control to take action, that would illegally delay, hinder, prohibit, and prevent lawful process for the Plaintiffs in the Defendants' respective Cities to timely and reasonably obtain municipal firearms permits. The Defendants' conduct,

as alleged herein, affirmatively and unjustifiably breached that duty and responsibility causing the foreseeable constitutional injury and financial damage about which the Plaintiffs complain.

69.     The Defendants' decisions, choices, and instructions to those under their supervisory control, initiated a series of events that established rules, customs, policies, practices, and procedures at the Defendants' respective police departments, which is illegally delaying, hindering, prohibiting, and preventing the respective Plaintiff and similarly situated CCDL members from the Defendants' respective City from timely exercising their constitutional rights.

70.     The Defendants knew or reasonably should have known that taking the actions that they took in establishing the rules, customs, policies, practices, and procedures at their respective police departments, and/or allowing those under their supervisory control to take the actions they took, would illegally delay, hinder, prohibit, and prevent lawful process for the Plaintiffs and similarly situated CCDL members in the Defendants' respective Cities to timely and reasonably obtain municipal firearm permits, which would result in constitutional injury and financial damage to the Plaintiffs.

71.     The Defendants knew or should have known of the violations of the Plaintiffs' constitutional rights, but failed to act to prevent them. Defendants' conduct shows a reckless disregard and callous indifference to the constitutional rights of the Plaintiffs and similarly situated CCDL members.

72. The constitutional violations suffered by the Plaintiffs and similarly situated CCDL members were entirely foreseeable and carried out by the Defendants and those under their supervisory control, in reckless disregard and callous indifference of the constitutional rights of the Plaintiffs, and similarly situated CCDL members.

73. The Plaintiffs have suffered financial damages and continue to suffer financial damages caused by the Defendants' personal involvement in depriving the Plaintiffs and similarly situated CCDL members of their constitutional rights, as will be proven at trial.

74. Although the Defendants have administratively slowed to the point of an effective shut down, the only avenue for the Applicants to obtain a municipal firearms permit, many categories of individuals statutorily exempt from the State's criminal laws can freely carry loaded, operable handguns in public without having their fingerprints taken, submitting any application, asking for permission to exercise their rights, passing a background check, or paying any fees at all, because of their status or former status as government favored categories of individuals.

75. The Connecticut Legislature has provided no findings or declarations to support any legitimate government interest for creating such special exemptions while denying other responsible and law-abiding citizens like the Applicants and similarly situated CCDL members, the ability to lawfully exercise their constitutional right to timely obtain, possess, and carry firearms for personal protection.

76. Upon information and belief, although the Defendants have administratively slowed to the point of an effective shut down, all avenues for the Applicants to timely have

their fingerprints taken and their applications processed to obtain a municipal firearms permit, the Hartford, New Haven, Bridgeport, and Waterbury Police Departments are continuing to timely take fingerprints and process the applications of applicants for potential employment, of arrestees, and/or of other individuals for purposes unrelated to issuing firearms permits.

77.   The Connecticut Legislature has provided no findings or declarations to support any legitimate government interest for timely taking the fingerprints or processing the applications of applicants for state employment, other permits, and for administrative purposes while refusing to timely take the fingerprints and process the applications of other law-abiding, responsible citizens, like the Applicants, and similarly situated CCDL members seeking to obtain a municipal firearms permit.

78.   At least twelve other states allow persons with Connecticut state-issued firearm permits to also carry firearms in those states (hereafter, the "reciprocal states"). In fact, Texas's recognition of Connecticut firearm permits is expressly based upon affirmation by Connecticut's Attorney General that Connecticut checks the background of its applicants for such permits prior to the issuance of the same. Upon information and belief, Montana maintains this same requirement for recognition of a Connecticut permit.

79.   Without a state-issued firearm permit, Connecticut citizens like the Applicants and similarly situated CCDL members are not afforded the right to carry firearms in reciprocal states.

80.     In addition to the twelve reciprocal states, almost all of the thirty-six remaining states which issue firearm permits, allow Connecticut citizens to apply in their state for a non-resident firearm permit if they hold a state-issued firearm permit from Connecticut.

81.     Without a state-issued firearm permit, Connecticut citizens like the Applicants and similarly situated CCDL members will not be afforded the right to apply for a non-resident firearm permit in those remaining states and therefore the Applicants and similarly situated CCDL members are prevented from even being able to apply to lawfully carry firearms in those states.

82.     The Defendants' conduct as alleged herein is unconstitutionally delaying, hindering, prohibiting, and preventing the Applicants and similarly situated CCDL members from applying for a permit required under state law to obtain, possess, and carry a firearm for personal protection in violation of their constitutional rights.

83.     Connecticut's laws regarding the purchase, possession, and carrying of firearms, and enforcement thereof against the Applicants and similarly situated CCDL members, as applied by the Defendants via their rules, customs, policies, practices, and procedures, infringe on the fundamental, individual right to keep and bear arms of the Applicants and similarly situated CCDL members, guaranteed under the Second and Fourteenth Amendments.

84.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." The Fourteenth Amendment to the

United States Constitution provides in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

85.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *Id.* at 805 (Thomas, J., concurring). The "right to keep and bear arms is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause." *Id.* at 806 (Thomas, J., concurring).

86.     Article the First, Section 15 of the Connecticut Constitution provides: "Every citizen has a right to bear arms in defense of himself and the state."

87.     "The very enumeration of the right [to keep and bear arms] takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008).

88.     "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634-35.

89.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, supra.

90.     This is particularly true when it comes to handguns, as the *Heller* Court has explicitly recognized the handgun as "the quintessential self-defense weapon" in the United States, and that a complete prohibition on their carry and use is necessarily invalid. Id. at 629.

91.     Each of the constitutional rights applicable to the states is equally applicable to the municipalities as subdivisions of the state.

92.     The Applicants and similarly situated CCDL members, desire and must be allowed to timely obtain, possess, and carry firearms for personal protection, and they would do so but for the reasonable fear and imminent risk of arrest by the Defendants, or those under their supervisory control, and criminal prosecution under the State's laws imposing criminal sanctions on the transfer, possession, and carrying of firearms by persons who have not been issued a firearms permit.

93.     The actions and orders of the Defendants, who are and were at all relevant times acting under color of state law, are therefore illegally delaying, hindering, prohibiting, and preventing the Applicants, and all similarly situated CCDL members, any ability to timely exercise their right to keep and bear arms.

94.     Specifically, the Defendants' unconstitutional conduct has administratively slowed to the point of an effective shut down, the only available channel for the Applicants and similarly situated CCDL members to timely and lawfully exercise this right, leaving the Applicants and similarly situated CCDL members subject to sanctions under the State's criminal statutory scheme.

## COUNT 1 – VIOLATION OF SECOND AMENDMENT
## RIGHT TO KEEP AND BEAR ARMS

95. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

96. Plaintiffs bring this claim against the Defendants in their official capacities for prospective injunctive relief and in their personal capacities for damages.

97. There is an actual and present controversy between the parties.

98. The Second and Fourteenth Amendments to the United States Constitution and Article the First, Section 15 of the Connecticut Constitution, guarantee adult citizens the fundamental right to keep and bear arms for personal protection.

99. The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire firearms for personal protection.

100. Defendants' unconstitutional conduct of administratively slowing to the point of an effective shut down, the only available channel for the Applicants and similarly situated CCDL members to timely and lawfully exercise their Second Amendment right to keep and bear arms has violated, and continues to violate, the constitutional rights of the Applicants and similarly situated CCDL members.

101. Defendants' unconstitutional conduct has caused, and continues to cause, CCDL injury as alleged herein. CCDL has no effective administrative remedy.

102. There is no effective administrative remedy for the Applicants' injuries. Resorting to an appeal to the Board of Firearms Permit Examiners pursuant to C.G.S. 29-28b

would be futile as the delay in obtaining a hearing before that Board currently exceeds two years.

103.   The Plaintiffs have no adequate remedy at law as no damages could compensate the deprivation of the constitutional rights of the Applicants and similarly situated CCDL members.

104.   Without an order for temporary injunctive relief pending a hearing on these Plaintiffs' claims for permanent injunctive relief, CCDL, the Applicants, and similarly situated CCDL members will suffer ongoing irreparable harm.

## COUNT 2 – 42 U.S.C. § 1983
## VIOLATIONS OF THE RIGHT TO KEEP AND BEAR ARMS

105.   Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

106.   Plaintiffs bring this claim against the Defendants in their official capacities for prospective injunctive relief and in their personal capacities for damages.

107.   42 U.S.C. § 1983 prohibits persons from depriving a person of constitutional rights under color of state law.

108.   As applied to the Applicants and similarly situated CCDL members, the Defendant's action which is delaying, hindering, prohibiting, and preventing the taking of fingerprints and processing applications for the purposes of issuing municipal firearms permits, is unconstitutional and violates the right to keep and bear arms of the Applicants and similarly situated CCDL members.

109. By delaying, hindering, prohibiting, and preventing the fingerprinting and processing of applications of law-abiding CCDL members, including Applicants, who wish to obtain the permit necessary under state law to legally obtain, possesses, and carry firearms for personal protection, the Defendants are unconstitutionally violating the right to keep and bear arms of the Applicants and similarly situated CCDL members.

110. By delaying, hindering, preventing, and prohibiting the Applicants and similarly situated CCDL members from obtaining, possessing, and carrying a firearm for personal protection, under the state statutes governing such conduct, the enforcement policies of Defendants violate the fundamental, individual right to keep and bear arms of the Applicants and similarly situated CCDL members, and thus have violated and continue to violate 42 U.S.C. § 1983, compelling the relief the Plaintiffs seek.

111. By and through the rules, customs, policies, practices, and procedures of Defendants not to timely take the fingerprints and process applications of firearms permit applicants like the Applicants and similarly situated CCDL members in accordance with the statutes, Defendants have violated and are continuing to violate 42 U.S.C. § 1983, compelling the relief the Plaintiffs seek.

112. The Plaintiffs have been injured and continue to be injured by the Defendants' unconstitutional conduct.

113. The Plaintiffs have suffered and continue to suffer damages by the Defendants' unconstitutional conduct as will be proven at trial.

114. The Applicants and similarly situated CCDL members have no adequate remedy at law as no damages could compensate them for the deprivation of their constitutional rights.

115. There is no effective administrative remedy for the injuries of the Applicants and similarly situated CCDL members. Resorting to an appeal to the Board of Firearms Permit Examiners pursuant to C.G.S. §29-28b would be futile as the delay in obtaining a hearing before that Board currently exceeds two years.

116. Without an order for temporary injunctive relief pending a hearing on the Plaintiffs' claims for permanent injunctive relief, the Applicants and similarly situated CCDL members will suffer ongoing irreparable harm.

## COUNT 3 – 42 U.S.C. § 1983
## VIOLATIONS OF THE RIGHT TO DUE PROCESS

117. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

118. Plaintiffs bring this claim against the Defendants in their official capacities for prospective injunctive relief and in their personal capacities for damages.

119. Connecticut statutes prohibit the Applicants and similarly situated CCDL members from exercising their constitutional right to keep and bear arms without a state-issued firearm permit.

120. Connecticut statutes prohibit the Applicants and similarly situated CCDL members from obtaining a state-issued firearm permit without law enforcement taking their fingerprints.

121. Defendants' rules, customs, policies, practices, and procedures prevent law enforcement from taking the Applicants' and similarly situated CCDL members' fingerprints and/or processing their applications, leaving these Applicants and similarly situated CCDL members no lawful process to timely obtain a municipal firearms permit.

122. Defendants' rules, customs, policies, practices, and procedures prevent the Applicants and similarly situated CCDL members from applying for a state-issued firearm permit, leaving them no lawful process to obtain, possess, and carry firearms for personal protection.

123. Since state statutes require the Applicants and similarly situated CCDL members to obtain a municipal firearm permit to exercise their constitutional rights, the State's subdivisions, including the Cities, must provide a lawful process for the Applicants and similarly situated CCDL members to timely obtain a municipal firearm permit.

124. Due to the conduct of the Defendants, the Applicants and similarly situated CCDL members have no lawful process through which to timely obtain a municipal permit to exercise their constitutional right.

125. Since the Defendants have failed and refused to provide a lawful process by which the Applicants and similarly situated CCDL members can timely obtain a municipal firearm permit, Defendants cannot require the Applicants and similarly situated CCDL members to obtain a municipal firearm permit to exercise their constitutional right, yet the Defendants continue to do so.

126.    Defendants' conduct of administratively slowing to the point of an effective shut down all lawful process for the Applicants and similarly situated CCDL members to obtain a municipal firearm permit, while continuing to require they first obtain such permit to exercise their constitutional right, is a violation of the Applicants' and similarly situated CCDL members' Fifth & Fourteenth Amendment right to due process of law.

127.    The Plaintiffs have suffered and continue to suffer damages by the Defendants' unconstitutional conduct as will be proven at trial.

128.    There is no effective administrative remedy for the Applicants' and similarly situated CCDL members' injuries. Resorting to an appeal to the Board of Firearms Permit Examiners pursuant to C.G.S.§ 29-32b would be futile as the delay in obtaining a hearing before that Board currently exceeds two years.

129.    The Applicants and similarly situated CCDL members have no adequate remedy at law as no damages could compensate them for the deprivation of their constitutional rights.

130.    Without an order for temporary injunctive relief pending a hearing on their claims for permanent injunctive relief, Plaintiffs will suffer ongoing irreparable harm.

## COUNT 4 – 42 U.S.C. § 1983
## VIOLATIONS OF THE EQUAL PROTECTION OF THE LAWS

131.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

132. Plaintiffs bring this claim against the Defendants in their official capacities for prospective injunctive relief and in their personal capacities for damages.

133. Article IV, Section 2 of the United States Constitution states in relevant part ". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

134. The Fourteenth Amendment to the United States Constitution provides in relevant part: "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

135. Connecticut law allows people who are residents of Connecticut and people who are residents of other states, who seek certain licenses, permits and certifications which require the state to obtain a copy of their fingerprints, to have their fingerprints taken by a law enforcement officer in the state.

136. The Defendants are allowing people seeking certain licenses, permits and certifications the opportunity to timely have their fingerprints taken by their respective police departments, but have denied and continue to deny the Applicants and similarly situated CCDL members the same opportunity, even though the Applicants and similarly situated CCDL members seek the opportunity to exercise a constitutionally-guaranteed right and those being given that opportunity are not.

137. Connecticut law allows people who are residents of Connecticut and people who are residents of other states, who follow the legal process established by state statute, and who are found to be qualified under Connecticut law, to timely obtain a permit to purchase, possess, and carry firearms for personal protection.

138.   Defendants' conduct of allowing people seeking certain licenses, permits and certifications the opportunity to timely have their fingerprints taken by the Defendants' respective police departments, while denying, and continuing to deny the Applicants and similarly situated CCDL members the same opportunity, deprives the Applicants and similarly situated CCDL members of the equal protection of laws.

139.   While residents of other states who follow the legal process established by their states' statutes, and who are found to be qualified under Connecticut law, can readily obtain a permit to carry a firearm for personal protection in Connecticut, the Defendants' conduct is unconstitutionally denying similar opportunity to residents of their respective Connecticut municipalities, including the Applicants and similarly situated CCDL members.

140.   Defendants' conduct denying Connecticut residents, including the Applicants and similarly situated CCDL members, the opportunity to timely obtain a permit to obtain, possess, and carry a firearm for personal protection, while at the same time state statute provides non-Connecticut residents with a superior right, deprives the Applicants and similarly situated CCDL members of the equal protection of laws.

141.   Defendants' conduct denying residents of their respective municipalities, including the Applicants and similarly situated CCDL members, the opportunity to timely obtain a permit to obtain, possess, and carry a firearm, while at the same time state statute provides residents of other Connecticut municipalities with a superior right, deprives the Applicants and similarly situated CCDL members of the equal protection of laws.

142.    The Plaintiffs have suffered and continue to suffer damages by the Defendants'
unconstitutional conduct as will be proven at trial.

143.    There is no effective administrative remedy for the Applicants' and similarly situated
CCDL members' injuries. Resorting to an appeal to the Board of Firearms Permit
Examiners pursuant to C.G.S.§ 29-32b would be futile as the delay in obtaining a
hearing before that Board currently exceeds two years.

144.    The Plaintiffs have no adequate remedy at law as no damages could compensate the
Plaintiffs for the deprivation of their Constitutional rights.

145.    Without an order for temporary injunctive relief, pending a hearing on the Plaintiffs'
claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable
harm.

## COUNT 5 – 42 U.S.C. § 1983
## VIOLATIONS OF THE PRIVILEGES & IMMUNITIES OF CITIZENSHIP

146.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth
herein.

147.    Plaintiffs bring this claim against the Defendants in their official capacities for
prospective injunctive relief and in their personal capacities for damages.

148.    Article IV, Section 2 of the United States Constitution states in relevant part ". . . the
citizens of each state shall be entitled to all privileges and immunities of citizens in
the several states."

149.  Section 1 of the Fourteenth Amendments to the United States Constitution states in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ."

150.  Citizens of every state who follow the legal process established by their respective states and who are found to be qualified under their state's law to obtain, possess, and carry firearms, have the legal right to obtain, possess, and carry firearms for lawful purposes.

151.  Such right to lawfully obtain, possess, and carry firearms for lawful purposes pursuant to the law of the state of citizenship is one of the privileges and immunities of citizenship as a citizen of the United States.

152.  The Defendants' conduct, which prevents the Applicants and similarly situated CCDL members from obtaining, possessing, and carrying firearms under applicable state statutes, deprives the Applicants and similarly situated CCDL members of the privileges and immunities of citizens.

153.  The Plaintiffs have suffered and continue to suffer damages by the Defendants' unconstitutional conduct as will be proven at trial.

154.  There is no effective administrative remedy for the Applicants' and similarly situated CCDL members' injuries. Resorting to an appeal to the Board of Firearms Permit Examiners pursuant to C.G.S.§ 29-32b would be futile as the delay in obtaining a hearing before that Board currently exceeds two years.

155.  The Plaintiffs have no adequate remedy at law as no damages could compensate the Plaintiffs for the deprivation of their Constitutional rights.

156.   Without an order for temporary injunctive relief pending a hearing on the Plaintiffs'

claims for permanent injunctive relief, the Plaintiffs will suffer ongoing irreparable

harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray the following relief:

1.   A trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38;

2.   Compensatory damages against the Defendants in their personal capacities as will be

proven at trial;

3.   Damages under 42 U.S.C. § 1983;

4.   Punitive damages under 42 U.S.C. § 1983;

5.   Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988;

6.   A declaratory judgment that the Applicants and all similarly situated CCDL members

who are not prohibited from obtaining, possessing, and carrying firearms under

federal and state laws, have a fundamental individual right to keep and bear arms,

including being able to obtain, possess, and carry firearms, guaranteed under the

Second and Fourteenth Amendments to the United States Constitution;

7.   A declaratory judgment that enforcement of CGS §§ 29-35 and/or 29-38 without the

Defendants providing a process for the Applicants and similarly situated CCDL

members who are not prohibited from obtaining, possessing, and carrying firearms

under federal and state laws to timely obtain, possess, and carry firearms, violates

their rights to keep and bear arms guaranteed under the Second and Fourteenth

Amendments to the United States Constitution, violates their right to due process of

law under the Fifth and Fourteenth Amendments to the United States Constitution,

violates their right to equal protection of the law guaranteed by Article IV, Section 2

and the Fourteenth Amendment to the United States Constitution, and deprives

them of the privileges and immunities of citizenship guaranteed by Article IV, Section

2 and the Fourteenth Amendment to the United States Constitution;

8. A declaratory judgment that the Defendants' rules, customs, policies, practices, and

procedures at their respective police departments, which delays, hinders, prohibits,

and prevents the timely taking of fingerprints and processing applications to obtain a

municipal firearms permit: violates the Applicants' and similarly situated CCDL

members' rights to keep and bear arms guaranteed under the Second and Fourteenth

Amendments to the United States Constitution, violates the Applicants' and similarly

situated CCDL members' right to due process of law under the Fifth and Fourteenth

Amendments to the United States Constitution, violates the Plaintiffs' and similarly

situated CCDL members' right to equal protection of the law guaranteed by Article

IV, Section 2, and the Fourteenth Amendment to the United States Constitution, and

deprives the Applicants and similarly situated CCDL members' of the privileges and

immunities of citizenship guaranteed by Article IV, Section 2 and the Fourteenth

Amendment to the United States Constitution;

9. A preliminary and permanent injunction ordering the Defendants to change the rules,

customs, policies, practices, and procedures at their respective police departments so

as to provide for a process under which the Applicants and similarly situated CCDL

members' may timely obtain municipal firearms permits required to apply to lawfully

obtain, possess, and carry firearms for personal protection;

10.    A writ of mandamus compelling the Defendants to timely take the fingerprints and

process the applications for municipal firearms permits of the Applicants and

similarly situated CCDL members under the timeline set forth in state law or

otherwise in a timely fashion;

11.    Any and all other and further legal and equitable relief, including injunctive relief,

against Defendants as necessary to vindicate the rights of the Plaintiffs and similarly

situated CCDL members, to effectuate the Court's judgment, or as the Court

otherwise deems just and proper.

Dated: AUGUST 30, 2021                    Respectfully submitted,


    */s/ Craig C. Fishbein*
Craig C. Fishbein, Esq.
(ct25142)
FISHBEIN LAW FIRM, LLC
100 South Main Street
P.O. Box 363
Wallingford, Connecticut 06492
Telephone: 203.265.2895
E-mail: ccf@fishbeinlaw.com


    */s/ Doug Dubitsky*
Doug Dubitsky, Esq.
(ct21558)
LAW OFFICES OF DOUG DUBITSKY
P.O. Box 70
North Windham, CT 06256
Telephone: 860.808.8601
Email: doug@lawyer.com


*Attorneys for the Plaintiffs*