UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT CITIZENS DEFENSE LEAGUE, INC, et al. : | |
| : | Case No. 3:21-cv-01156 (JAM) |
| Plaintiffs, : | |
| V. : | |
| JASON THODY, et al. : | |
| Defendants. : | November 2, 2021 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>CHIEF REBECA GARCIA'S MOTION TO SEVER</u>**

Chief Garcia, pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure, respectfully seeks an order from the court to sever the case against her by Ms. Cordero from the improperly joined additional defendant Chiefs of Police. The factual allegations directed by the four separate individual plaintiffs against the four separate municipal Chiefs of Police represent separate transactions and occurrences and therefore have been improperly brought in one action. In addition, the potential prejudice to Chief Garcia by bringing these additional claims against additional Chiefs of Police outweighs any interest in the facilitation of judicial economy.

1. <u>BACKGROUND</u>

The plaintiffs have brought a five-count complaint against four defendants (the Chiefs of Police of the four largest cities in Connecticut):

- The Connecticut Citizens Defense league, Inc., ("CCDL") against each defendant
- Mr. Orel Johnson against Chief Jason Thody (Hartford Police Department)

- Ms. Shaquanna Williams against Chief Renee Dominguez (New Haven Police Department)

- Ms. Anne Cordero against Chief Rebeca Garcia (Bridgeport Police Department); and

- Mr. Jamie Eason against Chief Fernando Spagnolo (Waterbury Police department)

The plaintiffs claim that each defendant has violated their respective Second Amendment rights to obtain a gun carry permit.

### Claims raised against Chief Garcia (Bridgeport)

Ms. Cordero's claims against Chief Garcia (Bridgeport) specifically allege, that:

- The permitting system in the City of Bridgeport has been slowed to the point of an effective shut down, making it nearly impossible for a Bridgeport resident to timely obtain a municipal firearms permit[1];

- Late in 2019, Ms. Cordero contacted the Bridgeport Police Department via telephone to apply for a municipal firearm permit and was told that someone would call her back, and that she subsequently called on many occasions over the ensuing months, and never received a call back;[2]

- In early June of 2021 Ms. Cordero called again to initiate the process for obtaining a municipal firearm permit, and was directed to sign up for an appointment to have her fingerprints taken;[3]

- When Ms. Cordero tried to sign up for an appointment she was informed that the first available appointment for her to submit her application was in January 2022 ("six months hence");[4] and

- "Upon information and belief" once an applicant has their fingerprints taken by the Bridgeport Police Department to start the application process and submit their application

---

[1] *See* 08/30/2021 Complaint, Doc. 1, at ¶ 6.
[2] *Id.* at ¶ 50.
[3] *Id.*
[4] *Id.*

2

it typically takes the Bridgeport Police Department in excess of eight weeks to process the application.[5]

### Claims raised against Chief Thody (Hartford)

Mr. Johnson's claims against Chief Thody (Hartford) specifically allege, that:

- On or about June 8, 2021, Mr. Johnson appeared at the Hartford Police Department to submit his application for a municipal firearm permit.;[6]

- Upon presenting himself for fingerprinting, Mr. Johnson was informed that he was required to first place his name on a list and that the Hartford police Department would eventually call applicants in their order on the list to arrange for fingerprinting and the processing of his application;[7]

- Mr. Johnson placed his name on the list and during the more than two and a half months since adding his name he has followed-up several times but has been informed that the Hartford Police department is not prepared to take his fingerprints or to accept his application;[8] and

- Upon information and belief, once an applicant has their fingerprints taken by the Hartford Police Department it typically takes in excess of eight weeks to process the permit application;[9]

### Claims raised against Chief Williams (New Haven)

Ms. Williams' claims against Chief Williams (New Haven) specifically allege, that:

- On or about August 18, 2021, Ms. Williams appeared at the New Haven Police Department to submit her application for a municipal firearm permit;[10]

---

[5] *Id.* at ¶ 51.
[6] *Id.* at ¶ 40.
[7] *Id.*
[8] *Id.* at ¶ 41.

[9] *Id.* at ¶ 43.
[10] *Id.* at ¶ 45.

3

- Ms. Williams had previously been fingerprinted at a cost of $25.00 and included her fingerprints with the application documents she attempted to submit;[11]

- Ms. Williams was informed that the New Haven Police Department implemented a new permitting system for firearms permits and would thus not accept Ms. Williams' application;[12]

- Ms. Williams was directed to sign up online for an appointment to submit her application;[13]

- When Ms. Williams attempted to sign up online for an appointment as instructed, she was informed that the first available appointment for her to submit her application was on March 30, 2022, more than seven months later;[14]

- Ms. Williams was also informed that she would be required to submit a second set of fingerprints at additional cost;[15] and

- Upon information and belief, once an applicant has their fingerprints taken by the New Haven Police Department it typically takes in excess of eight weeks to process the permit application;[16]

**Claims raised against Chief Spagnolo (Waterbury)**

Mr. Eason's claims against Chief Spagnolo (Waterbury) specifically allege, that:

- On August 12, 2021, Mr. Eason appeared at the Waterbury Police Department to submit his application for a municipal firearm permit;[17]

- Mr. Eason was informed that the Waterbury Police Department had implemented a new permitting system, and thus would not accept his application for a municipal firearm permit;[18]

---

[11] *Id.* at ¶ 46.
[12] *Id*.
[13] *Id*.
[14] *Id*.
[15] *Id*.
[16] *Id.* at ¶ 47.
[17] *Id.* at ¶ 54.

[18] *Id*.

4

- Mr. Eason was directed to sign up online for an appointment to submit his application, and was able to submit his application on August 17, 2021;[19]

- At the time he submitted his application, Mr. Eason was informed that the Waterbury Police Department would take forty-eight weeks (approximately eleven months) to process his application;[20]

- Upon information and belief, once an applicant has their fingerprints taken by the Waterbury Police Department it typically takes in excess of eight weeks to process the permit application.[21]

The CCDL's claims against each defendant are made in a representational capacity and echo the allegations levelled against each defendant by each individual plaintiff. Chief Garcia is simultaneously filing a motion to dismiss the claims brought by the CCDL for lack of organizational standing.

2. DISCUSSION

IMPROPER JOINDER AND SEVERANCE

"Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The court approaches the determination of "[w]hat [might] constitute the same transaction or occurrence ... on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). In

---

[19] *Id.* at ¶ 55.
[20] *Id.*
[21] *Id.* at ¶ 56.

interpreting the terms transaction or occurrence as used in Rule 13(a), Fed. R. Civ. P., the Second Circuit has observed that whether a counterclaim arises out of the same transaction as the original claim depends upon an assessment of "the logical relationship between the claims" and a determination of whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978) (citations omitted). The court applies an analogous interpretation to the terms transaction or occurrence as used in Rule 20(a)(2).

"This same two-prong test applies when multiple plaintiffs are involved. For example, in *Coughlin v. Rogers,* 130 F.3d 1348 (9th Cir.1997), the court addressed whether a single complaint by 50–plus plaintiffs asserting mandamus relief against the Department of Immigration and Naturalization was appropriate based on the allegations that the defendants unreasonably delayed adjudicating the plaintiffs' applications and petitions. The Ninth Circuit concluded that the plaintiffs failed to satisfy both prongs of the Rule 20(a) test. *Id.* at 1350. The court noted that the first prong—"same transaction" requirement—refers to "similarity in the factual background of a claim." *Id.* While the "basic connection among all the claims is the alleged procedural problem of delay," the court concluded that the "mere allegation of general delay is not enough to create a common transaction or occurrence." *Id.* Given that each plaintiff "waited a different length of time, suffering a different duration of alleged delay," that "the delay is disputed in some instances and varies from case to case," and that "there may be numerous reasons for the alleged delay," the claims did not sufficiently create a common transaction or occurrence. *Id.,* citing, *Harris v. Spellman,* 150 F.R.D. 130, 132 (N.D.Ill.1993) (allegedly similar procedural errors do not convert independent prison disciplinary hearings into same series of

transactions or occurrences when hearings involved different incidents of purported misconduct raising different issues of law.). This is very much like *Coughlin,* where the plaintiffs allege that defendants subjected them to the same or similar treatment, but the claims are factually unrelated."[22]

An examination of the claims raised against each separate defendant demonstrate that the allegations do not arise from the same transaction or occurrence. The carry permit procedures of the four separate municipalities are different. The applicants are different. The alleged delays in processing are different. **Waterbury** takes eleven months to process applications; **Bridgeport** is alleged to have a six month wait for fingerprinting; **New Haven** required a second set of fingerprints, and a second processing fee together with a seven month wait for fingerprinting; and **Hartford** is not prepared to take fingerprints. Moreover, each defendant may have different reasons for any delays in the processing of carry permits. For example, Bridgeport is known be down approximately 100 officers in strength from the desired force level. Each municipality has different budgets, and each has to process carry permits under separate circumstances.

Rule 21 of the Federal Rules of Civil Procedure provides that a court "may sever any claim against a party" pursuant to a motion filed by a party to the action or on its own. Fed. R. Civ. P. 21. In exercising its discretion to decide whether to sever a claim, a court should weigh the following factors: "(1) [do] the claims arise out of the same transaction or occurrence; (2) [do] the claims present some common question of law or fact; (3) [would] settlement of the claims or judicial economy be facilitated; (4) will prejudice [ ] be avoided; and (5) [will] different witnesses and documentary proof [be] required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263–66 (D. Conn. 2012) (citation omitted).

---

[22] *Proctor v. Applegate*, 661 F. Supp. 2d 743, 779 (E.D. Mich. 2009)

Each plaintiff has a different claim from each defendant. They raise claims arising from separate transactions. Settlement of the claims in one action will not facilitate judicial economy (perhaps just the opposite). Different witnesses and different documentary proofs will be required for the separate claims. Chief Garcia will be prejudiced by conjoined claims by virtue of the complexity of four separate municipal permit procedures and the potential of prejudice from being lumped in with other police department practices. These separate matters should be severed.

3. <u>CONCLUSION</u>

For all the above stated reasons, Chief Garcia respectfully requests the Court to sever the underlying action against her from the other defendants. Ms. Cordero's claims should be brought against her in a separate action.

RESPECTFULLY SUBMITTED
CHIEF REBECA GARCIA

/s/ Raymond J. Rigat, Esq.
By:_____
Raymond J. Rigat, Esq.,
Federal Bar No. ct13320
The Rigat Law Firm
23 East Main Street
Clinton, Connecticut  06413
Tel. (860) 664-5951
Email: raymondjrigat@gmail.com     AND


/s/ Richard G. Kascak, Jr., Esq.
By:_____
Richard G. Kascak, Jr., Esq.
Associate City Attorney
999 Broad Street
Bridgeport, CT  06604
Telephone No: (203) 576-7647
Federal bar#ct07820
Richard.kascak@bridgeportct.gov

## **CERTIFICATE OF SERVICE**

  A copy of the foregoing was filed electronically and served by regular U.S. Mail on anyone unable to accept electronic filing on November 2, 2021. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        /s/ Raymond J. Rigat, Esq.
        _____
        Raymond J. Rigat, Esq.